# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## <u>LETTER OPINION</u>

January 29, 2007

Agnes S. Wladyka
Abromson & Carey
60 Park Place, Suite 601
Newark, NJ 07102

      (*Attorney for Plaintiff*)

Christopher J. Christie
United States Attorney
Gina N. Shin
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

      (*Attorney for Defendant*)

    **RE:**    **Chonko v. Commissioner of Social Security
        Civ. No. 06-1647 (WJM)**

Dear Counsel:

    Plaintiff Nicholas Chonko ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) (2006) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). There was no oral argument. Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## Background

Plaintiff is a 54 year old male.  He applied for DIB on March 21, 2003, alleging disability due to a torn right and left rotator cuff.  (Tr. at 57-59, 64-73.)  The Commissioner denied his application initially and on reconsideration.  (Tr. at 24-26, 33-35.)  On April 5, 2005, the Commissioner held a hearing regarding Plaintiff's application before Administrative Law Judge Ralph Muehlig (the "ALJ").

In a decision dated May 5, 2005, the ALJ denied Plaintiff's application for benefits.  (Tr. at 18-23.)  Applying the familiar five-step analysis for determining whether a claimant is disabled, the ALJ first found that Plaintiff had not engaged in any substantial gainful activity. (*See* Tr. at 18.)  Then, at Step Two, he found that Plaintiff suffered from a severe impairment (i.e., rotator cuff tears to both shoulders).  (Tr. at 19.)  At Step Three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments listed in Section 1.00 Appendix 1, Subpart P, Regulations No. 4.  (Tr. at 19.)  Then, at Step Four, the ALJ discredited Plaintiff's complaints of disabling pain and determined that he retained the residual functional capacity to perform light work and was unable to perform any of his past relevant work.  (Tr. at 19-20.)  Finally, at Step Five, the ALJ applied the Medical-Vocational Guidelines and found that work existed in significant numbers in the national economy that Plaintiff could perform (i.e., retail sales, cashier, and food service clerk).  (Tr. at 20-22.)  Therefore, the ALJ determined that Plaintiff was not disabled and, accordingly, not entitled to DIB.  (Tr. at 22.)  The Appeals Council denied review on February 22, 2005.  (Tr. at 7-9.)

Plaintiff appeals the ALJ's ruling.  Specifically, he argues that the ALJ erred at steps three through five of his five step analysis.  Plaintiff's appeal is now before the Court.

## Standard of Review

In reviewing the ALJ's decision, the district court exercises plenary review over his legal conclusions and is bound by his factual findings that are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), as the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Woody v. Secretary of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance").  Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner.  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

2

## Discussion

**A.    The ALJ's Step Three Analysis**

Plaintiff argues that the ALJ erred at Step Three by: (1) not explaining the basis for his decision that Plaintiff's impairments did not meet or equal in severity Listing § 1.00 of Appendix 1; and (2) by not evaluating Plaintiff's impairments in combination to determine if he met or equaled in severity Listing § 1.00.

**1.    Sufficiency of the ALJ's Analysis**

At Step Three, the ALJ determined that Plaintiff's impairment did not meet or equal in severity Listing § 1.00 of Appendix 1.  This listing covers disorders of the musculoskeletal system.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00-1.08.  It contains essentially seven listed impairments.  Listing § 1.02 covers major joint dysfunction.  Listing § 1.03 concerns reconstructive surgery or surgical arthrodesis of major weight-bearing joint.  Listing § 1.04 governs disorders of the spine.  Listing § 1.05 covers amputation.  Listing § 1.06 deals with fractures of the femur, tibia, pelvis, or the tarsal bones.  Listing §1.07 concerns fractures of an upper extremity.  Finally, Listing § 1.08 governs soft tissue injury.

In his Step Three analysis, the ALJ found that Plaintiff's impairment did not meet any of these listings.  He stated:

> The medical evidence indicates that the claimant has residuals of rotator cuff tear to both shoulders, an impairment that is "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Section 1.00 (musculoskeletal system) Appendix 1, Subpart P, Regulations No. 4.  The claimant has sustained multiple work-related injuries to both shoulders and has undergone surgeries.

(Tr. at 19.)  Plaintiff argues that this analysis is insufficient.  According to him, it fails to explain why his impairment did not meet or equal in severity Listing § 1.00.  Plaintiff contends this insufficient explanation warrants remand.

In *Burnett v. Commissioner of Social Security*, the Third Circuit held that the ALJ must "set forth the reasons for his decision," and that an ALJ's bare conclusory statement that an impairment did not match, or is not equivalent to, a listed impairment was insufficient.  *See* 220 F.3d 112, 119-20 (3d Cir. 2000).  In *Jones v. Barnhart*, however, the Third Circuit held that a reviewing court must look at the ALJ's decision as a whole to determine whether the ALJ "considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing."  364 F.3d 501, 505 (3d Cir. 2004).  The ALJ is not required to

use "magic words" in his analysis or adhere to a particular format; rather, the law simply requires "that the record be developed sufficiently to permit meaningful appellate review." *See Sassone v. Commisioner*, 165 Fed. Appx. 954, 959 (3d Cir. 2006) (citing *Jones*, 364 F.3d at 505).

While the ALJ in this matter could have provided more detail in his Step Three analysis, the basis for his decision is nonetheless clear. At Step Three, Plaintiff had the burden of presenting sufficient evidence that his medical problem was of listing severity. *Burnett*, 220 F.3d at 120 n.2. To establish that his impairment met or equaled Listings §§ 1.02 and 1.03, Plaintiff had to show either an inability to ambulate effectively or an inability to perform fine and gross manipulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02-1.03. In this case, Plaintiff established neither. Regarding the inability to ambulate effectively, Plaintiff never argued that his walking was impaired.[1] Furthermore, regarding the inability to perform fine and gross manipulations, the ALJ found that Plaintiff could perform jobs involving pushing and pulling of arm controls.[2] (Tr. at 21.) Furthermore, the ALJ noted that all of Plaintiff's treating sources indicated that he could return to his job post surgery. (Tr. at 21.) Therefore, Plaintiff's impairment did not satisfy Listings §§ 1.02 and 1.03.

Moreover, Plaintiff could not satisfy the remaining listings under § 1.00. He never claimed to suffer from any disorder of the spine (Listing § 1.04), or anything related to amputation (Listing § 1.05). Furthermore, he did not suffer any fracture of the femur, tibia, pelvis, or tarsal bones (Listing § 1.06), or suffer disability due to a fracture of an upper extremity (Listing § 1.07).

With respect to soft tissue injury (Listing § 1.08), a claimant meets the requirements of this listing if major functioning was not restored within 12 months of onset and was under continuing surgical management for the salvage or restoration of major function. 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.08. The regulations define loss of functioning as the inability to ambulate effectively or the inability to perform fine or gross movements effectively on a sustained basis. 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(B)(2)(a). An inability to perform fine and gross movements effectively corresponds to an extreme loss of function of both upper extremities. 20 C.F.R. Part 404, Subpt. P, App. § 1.00(B)(2)(c). Examples of inability to perform fine and gross movements effectively include the inability to prepare a simple meal and feed oneself and to take care of personal hygiene. *Id.* In the present case, Plaintiff could ambulate effectively and perform fine and gross manipulations on a sustained basis.

---

[1] The inability to ambulate effectively is defined as "an extreme limitation on the ability to walk...." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §1.00(B)(2)(b)(1).

[2] The inability to perform fine and gross manipulations "means an extreme loss of function of both upper extremities...." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00 (B)(2)(c). The listing provides that "[t]o use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, *pushing*, *pulling*, grasping and fingering to be able to carry out activities of daily living." *Id.* (emphasis added).

4

Furthermore, the Plaintiff admitted that he prepared simple meals and attended to his personal needs unassisted, including personal hygiene. (Tr. at 78.) Thus, Plaintiff failed to meet Listing § 1.08.

Accordingly, although the ALJ's discussion at Step Three was somewhat sparse, the basis for his decision is nevertheless apparent. Therefore, Plaintiff's argument on this ground is denied.

### 2.        Combination of Impairments

Next, Plaintiff argues that the ALJ erred at Step 3 by not evaluating whether the combination of his impairment met or equaled a listed impairment. The impairments that Plaintiff claims the ALJ disregarded include insomnia, dizziness, tinnitus, and obesity. (Pl.'s Reply Br. at 2.) In response, the Commissioner argues that Plaintiff only raised one impairment at the hearing and, therefore, the ALJ did not err by failing to consider a combination of impairments. The Court agrees with the Commissioner. Upon review of the ALJ's opinion, the transcript of the hearing, and the administrative record, it is clear that Plaintiff raised only one impairment at the hearing – i.e., rotator cuff injuries – and no other. (*See* Tr. at 18-23, 65, 393-425.) Furthermore, we cannot fault the ALJ for failing to discuss Plaintiff's insomnia, dizziness, tinnitus, or obesity because the record contains no mention of a physician diagnosing or treating Plaintiff for any of these problems and contains no objective medical evidence of these conditions in relation to any resulting disability. *See, e.g., Sassone*, 165 Fed. Appx. at 958 (citing *Rutherford v. Barnhart*, 339 F.3d 546, 553 (3d Cir. 2005). Moreover, because Plaintiff's physicians were apparently aware of at least some of these problems (i.e., obesity), if not all of them, the ALJ's discussion and adoption of their medical conclusions (*see* supra part B.1 and B.2) constitutes, at a minimum, an indirect consideration of and rejection of these conditions in his disability analysis. *Id.* (citing *Rutherford*, 339 F.3d at 553). Accordingly, Plaintiff's argument on this ground is denied.

### B.        The ALJ's Step Four Analysis

Plaintiff next argues that the ALJ erred at Step Four in two ways: (1) by failing to provide reasons for discrediting his subjected complaints of pain; and (2) by failing to base his determination that he can perform "light work" on substantial evidence.

### 1.        Credibility of Plaintiff's's Subjective Complaints of Pain

At Step Four, the ALJ found that Plaintiff's complaints of pain were not fully credible. Plaintiff argues that the ALJ erred at this step by not fully explaining his reasons for discrediting his complaints of pain. It is well-established that "[a]n ALJ must give serious consideration to a claimant's subjective complaints ... even when those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (quoting *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). Therefore if an ALJ does not accept a claimant's

subjective complaints, the ALJ is obligated to explain his reasoning.  *Id.* at 1067-1068.  In this respect, we require more than a conclusory statement that a claimant's complaints were not credible.  *See Sykes*, 228 F.3d at 266.

Here, the ALJ stated at the end of his opinion that: "The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision."  (Tr. at 22.)  Upon reviewing the body of the decision, it is clear that the ALJ based his decision upon substantial evidence.  For instance, the ALJ noted that follow-up records from Dr. Matthew Garfinkle, Plaintiff's treating physician, showed good progress post surgery (Tr. at 103-105), and on March 1, 2001 an examination by Dr. Garfinkle was essentially normal with full motion, no pain, and normal strength (Tr. at 106-107).  Furthermore, on July 17, 2001, Dr. Garfinkle noted that Plaintiff was nine months status post shoulder rotator cuff repair and was progressing well and had returned to work full duty with no problems.  (Tr. at 99.)  Moreover, notes from Twinboro Physical Therapy showed on February 5, 2002 that Plaintiff began right shoulder therapy on December 12, 2001.  The notes indicate that Plaintiff showed gains in motion and strength at the shoulder, and gains in abduction and flexion.  (Tr. at 127-132.)  In addition, notes from Dr. Andrew Carollo, another treating physician, which were taken six months after Plaintiff's surgery, report that Plaintiff's range of motion in his right shoulder improved significantly.  (Tr. at 298-301.)  Also, treatment notes from Dr. Nicholas Malagras, a treating physician, indicated that Plaintiff did not complain about shoulder pain.  (Tr. at 381.)

Even assuming that Plaintiff suffered from some shoulder pain, disability requires more than the inability to work without pain.  To be disabling, pain must be so severe as to preclude any substantial gainful activity.  *See* 42 U.S.C. §§ 423(d)(1)(A), (d)(5)(A).  Here, the ALJ's decision that Plaintiff's complaints of pain were not so disabling to the extent alleged was based upon substantial evidence.  Therefore, Plaintiff's argument on this ground is denied.

### 2.      Ability to Perform "Light Work"

Next, Plaintiff argues that the ALJ's determination that he retained the residual functional capacity to perform light work was conclusory and not supported by substantial evidence.  When determining a claimant's residual functional capacity, the ALJ must consider all relevant evidence.  *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546.  This includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitation by others."  *Fargnoli*, 247 F.3d at 41.  In addition, the ALJ must give "a clear satisfactory explanation of the basis on which the [residual functional capacity] rests."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  In *Cotter*, the Third Circuit explained:

> [A]n examiner's findings should be as comprehensive and analytic as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions

6

> are based, so that a reviewing court may know the basis for the
> decision. This is necessary so that the court may properly exercise its
> responsibility under 42 U.S.C. § 405(g) to determine if the
> Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)). *Cotter* requires
that the "ALJ not only [give] an expression of the evidence s/he considered which supports the
result, but also some indication of the evidence which was rejected." *Id.* If the "ALJ fails to
identify the evidence he or she rejects and the reasons for its rejection," the Court is unable to
conduct its substantial evidence review. *Walton v. Halter*, 243 F.3d 703, 710 (3d Cir. 2001).

Plaintiff argues that the ALJ erred at Step Four by not crediting the opinion of a certain
treating doctor, who Plaintiff fails to name in his brief, which apparently found that Plaintiff
could not perform repetitive arm movements. (*See* Pl.'s Br. at 17.) Furthermore, Plaintiff argues
that the testimony of Dr. Martin A. Fechner, a medical expert who testified at the hearing,
supports this treating physician's opinion. Contrary to this argument, though, the ALJ sets forth
the following reasons for not giving weight to any of his treating physicians: (1) Dr. Garfinkle's
reports actually indicated that Plaintiff was progressing well after his surgery (Tr. at 19.); (2) Dr.
Carollo's reports showed that Plaintiff had an improved range of motion in his right shoulder,
following surgery on that shoulder (Tr. at 20.); and (3) finally, the ALJ noted that Dr. Fechner
only testified that Plaintiff had limited repetitive use of his arms (Tr. at 20). Notably, Dr.
Fechner never testified that Plaintiff's impairments were so severe as to preclude him from
performing certain tasks associated with light work. (*See* Tr. at 418-19.)[3] Therefore, the ALJ did
set forth properly "a clear and satisfactory explication of the basis on which [his rejection of the
treating physician's testimony] rested, as required under *Cotter*, 642 F.2d at 704.

Furthermore, the ALJ's findings at Step Four were based upon substantial evidence. As
mentioned above, the ALJ assessed the various reports and notes produced by Plaintiff's treating
physicians and found that, while they showed some amount of limitation in his arms, Plaintiff
nevertheless was progressing well, had some amount of flexibility in his arms, and had a certain
amount of strength in his limbs. (*See* Tr. at 19-20.) Furthermore, the ALJ specifically rejected
Plaintiff's subjective complaints of pain. (*See* Tr. at 19, 21.) Moreover, the findings of
consultative physician, Dr. Lisa Zhang, support the ALJ's determination that Plaintiff could
perform light work. Specifically, her July 11, 2003 examination revealed normal findings except
for some limitations in the range of motion in his shoulders. (Tr. at 304.) In addition, a report by
a State agency medical consultant determined that Plaintiff could perform activities consistent
with the full range of light work. (Tr. at 307.) While the ALJ apparently acknowledged that
Plaintiff experienced some limits when using his arm, such limits did not preclude him from
undertaking the physical arm motions required in performing light work. Based on the

---

[3] The Court also notes that Dr. Nicholas C. Malagras, who treated Plaintiff for high blood
pressure and various minor complaints, noted that Plaintiff had no complaints about shoulder
pain. (Tr. at 381.)

foregoing, the Court finds that the ALJ's decision that Plaintiff could perform light work as defined under 20 C.F.R. 404.1567(b) was based upon substantial evidence.

### C.      The ALJ's Step Five Analysis

Finally, Plaintiff argues that the ALJ erred at Step 5 by relying solely on the Medical Vocational Guidelines to determine that he could still perform work in retail sales, food services, and as a cashier.  On this point, the Court disagrees.  The record demonstrates that Plaintiff suffered only from an exertional impairment.  This is an impairment affecting the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling)."  20 C.F.R. § 404.1569(b).  As such, the ALJ correctly applied the Medical-Vocational Guidelines to determine whether jobs exist in the national economy that Plaintiff could perform.  *See, e.g., Sykes*, 228 F.3d at 270; *Creegan v. Comm'r of Soc. Sec.*, 142 Fed. Appx. 567, 570 n.3 (3d Cir. 2005).  Furthermore, Plaintiff does not argue that the ALJ's application of the Medical-Vocational Guidelines, nor the ALJ's determination that Plaintiff suffered only from exertional impairments, was not based on substantial evidence.  Accordingly, the ALJ did not err by not employing the testimony of a vocational expert.

### Conclusion

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**.  An appropriate Order accompanies this Letter Opinion.


                                          s/William J. Martini

                                          _____

                                          **William J. Martini, U.S.D.J.**

8