UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NICHOLAS CHONKO,**  **Plaintiff,**  v.  **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**  **Defendant.** | MASTER FILE: 06-CV-1647 (WJM)  OPINION  HON. WILLIAM J. MARTINI |

Agnes S. Wladyka
Agnes S. Wladyka, LLC
744 Broad Street
16th Floor
Newark, NJ 07102

Jon C. Dubin
Rutgers School of Law-Newark
Urban Legal Clinic
123 Washington Street
4th Floor
Newark, NJ 07102

(*Counsel for Plaintiff*)

Gina N. Shin
Social Security Administration
Office of General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278-0004

Sandra M. Grossfeld
Office of the U.S. Attorney
Social Security Administration
26 Federal Plaza

Room 3904
New York, NY 10278

(*Counsel for Defendant*)

**WILLIAM J. MARTINI, U.S.D.J.:**

  Chonko files this motion seeking attorney's fees under the Equal Access to Justice Act. These fees resulted from his appeal of a decision by the Commissioner of Social Security denying Chonko social security disability insurance benefits. The Commissioner presents only two objections. First, the Commissioner argues that the amount Chonko requests is not reasonable. Second, the Commissioner argues that any award should go to Chonko, not Chonko's pro bono counsel. The Court finds that Chonko's request is reasonable. The Court further holds that EAJA fees are properly awarded to Chonko, not his counsel. Accordingly, Chonko's motion is **GRANTED**.

**I. FACTS AND PROCEEDINGS**

  This motion requires only a cursory description of the facts and proceedings. Chonko applied for social security disability benefits. The Commissioner denied the application. Chonko appealed the Commissioner's decision to this Court, which affirmed. Chonko then appealed to the Third Circuit. Before the Third Circuit heard Chonko's appeal, however, the parties jointly stipulated to remand the case back to the Commissioner.

  During his appeal to the Third Circuit, Chonko was represented pro bono by a

team from the Rutgers Law School Urban Legal Clinic. The team was lead by Rutgers Law Professor Jon Dubin, the Director of Clinical Programs at the law school. The other two team members were third-year Rutgers Law School students Michael McGillion and Safia Hussain.[1]

Chonko now moves under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, for attorney's fees representing the Rutgers team's work for the Third Circuit appeal.[2] Chonko seeks $15,182.96 in fees for work performed by Dubin, McGillion, and Hussain. He moves the Court to award these fees directly to the Rutgers Urban Legal Clinic.

The Commissioner opposes Chonko's request. The Commissioner concedes that Chonko is entitled to attorney's fees under EAJA for the Rutgers team's work on appeal and objects to the award on only two grounds. First, the Commissioner claims that Chonko's fee request is unreasonably high. Specifically, the Commissioner argues that the number of hours the Rutgers team spent litigating the appeal was excessive. Second, the Commissioner claims that any award of attorney's fees under EAJA should go to Chonko, not his attorneys.

## II. DISCUSSION

---

[1] The Court thanks the team members for their work on this case, which the Court found exemplary.

[2] The parties have already resolved the issue of attorney's fees for work performed before this Court.

3

The Equal Access to Justice Act ("EAJA") provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). EAJA requires a district court to award a "prevailing party" reasonable attorney's fees resulting from the appeal of an adverse decision of the Social Security Administration Commissioner. See Kadelski v. Sullivan, 30 F.3d 399 (3d Cir. 1994).

### A. Whether Chonko's Claimed Attorney's Fees Are Reasonable

The Commissioner concedes that Chonko is entitled to reasonable attorney's fees but claims that the fees Chonko requests are unreasonably high. The Court disagrees.

EAJA permits awards of attorney's fees only to the extent they are reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "Although counsel are entitled to full compensation for their efforts, '[i]t does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended.'" Bunn v. Bowen, 637 F. Supp. 464, 469 (E.D.N.C. 1986) (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1981) (en banc)). If attorney hours are unnecessary, redundant, or inefficient, the court should reduce the hours claimed to reflect a reasonable award. Ashton v. Pierce, 580 F.

Supp. 440, 442 (D.D.C. 1984).  The prevailing party's attorneys may assist the court in this regard and indeed should make a good faith effort to exclude fee requests that are excessive.  See Hensley, 461 U.S. at 434.

Chonko has set forth for the Court the hours that the Rutgers team spent litigating the appeal.  He asserts that Dubin spent 86.25 hours litigating the Third Circuit appeal.  Of this, Dubin allegedly spent 55.5 hours initially litigating the appeal, 15.75 hours drafting and filing a reply brief for this motion, and 15 hours working on a surreply to the Commissioner's opposition.  (Pl.'s Pet. for Att'y Fees ¶ 10; Supplemental Decl. of Jon C. Dubin ¶ 10; Second Supplemental Decl. of Jon C. Dubin; Third Supplemental Decl. of Jon C. Dubin.)  Chonko also asserts that Hussain spent 61.25 hours litigating the matter and that McGillion spent 68.5 hours.  (Aff. of Safia Hussain ¶ 4; Aff. of Michael McGillion ¶ 4.)

For this work, Chonko seeks $15,182.96 in EAJA fees.  He calculated this number in two steps.   First, Chonko billed Dubin's time at a rate of $167.23 per hour and Hussain's and McGillion's time at a rate of $100 per hour.  (Pet. ¶¶ 10, 11.)  Second, Chonko reduced some of the hours he claimed for the Rutgers team, recognizing that a reduced number of hours might be more reasonable.  (Pet. ¶ 12.)  He reduced Hussain's and McGillion's hours by 50%, claiming only 64.5 hours between them.  (Pet. ¶ 12.)  Also, Chonko reduced the 55.5 hours that Dubin initially spent litigating the appeal to 26.75 hours and further reduced Dubin's 15 hours working on a surreply to 8.5 hours.

5

(Pet. ¶ 12; Second Dubin Decl.; Third Dubin Decl.)

The Court finds these claimed hours to be reasonable in light of Chonko's reductions. Even before a detailed exploration of how Dubin, McGillion, and Hussain spent their time, the total amount of hours billed—roughly 35 hours by Dubin and roughly 65 hours by McGillion and Hussain together—appears a reasonable amount of time to draft and file an appeal of a social security case with the Third Circuit. Indeed, several courts have found that such an appeal may require roughly the same amount of work as that billed here. See, e.g., Walton v. Massanari, 177 F. Supp. 2d 359, 363–65 (E.D. Pa. 2001); McCauley v. Barnhart, No. 01-4953 (D.N.J. Sep. 21, 2005) (approving "65.75 lawyer hours and 124.45 lower rate student hours" for Rutgers Clinic's Third Circuit work).

The Commissioner argues that courts generally approve only 20–40 hours of legal work in the average disability case (Opp'n to Mot. 2–3), but the cases cited in support are not persuasive. The cases the Commissioner cites deal with the reasonable legal expenditure in a social security case before a district court. See, e.g., Harden v. Comm'r Soc. Sec. Admin., 497 F. Supp. 2d 1214, 1215–16 (D. Or. 2007); Pribek v. Sec'y, Dep't of Health & Human Servs., 717 F. Supp. 73, 75 (W.D.N.Y. 1989). But as the Commissioner admits, the appellate portion of a social security case may reasonably require more time than the portion before the trial court. (Opp'n 6–7.)

Furthermore, a more detailed examination of the Rutgers Team's billing confirms

6

that Chonko's requested legal fees are reasonable, particularly given that Chonko requests roughly half of the hours actually billed. The majority of the research and drafting was performed by Hussain and McGillion. McGillion reported spending roughly 17 hours reviewing the case materials, roughly 9 hours performing legal research, and roughly 35 hours drafting and editing the brief. (McGillion Aff.) The remainder of McGillion's 68.5 hours were spent on miscellaneous tasks such as "Preparing appendices" and "Researching In Forma Pauperis motion." (McGillion Aff.) Hussain's time allocation was similar although it is a bit more difficult to precisely determine how much time she spent on each task since she often grouped tasks such as "Researching" and "drafting brief" together.[3] (Hussain Aff.) Notwithstanding Dubin's reply brief and surreply, he spent roughly 8 hours reviewing the case materials, roughly 27 hours performing research, and roughly 13 hours meeting with and supervising McGillion and Hussain. (Dubin Decl.) He spent the remainder of the 55.5 hours initially billed on miscellaneous tasks such as "Preparation of draft retainer" and "Preparation of time records." (Dubin Decl.) While the Court finds that the total amount of time the Rutgers team spent on these tasks a bit excessive, Chonko's proposal to bill only half of this time is a reasonable accommodation. See Ashton, 580 F. Supp. at 442.

The Court finds the Commissioner's specific complaints unpersuasive. The

---

[3]The Court does not find such an allocation impermissible. Legal research and writing are often performed concurrently, making a precise allocation of time between them impossible.

Commissioner complains that Dubin spent too much time on certain tasks, such as 7 hours reviewing the administrative transcript and 6.75 hours preparing time records and the EAJA fee application. (Opp'n 4–6.) But these are time consuming activities; reviewing the full administrative transcript could easily take a day's work, and the EAJA fee application requires many pages of documentation and briefing. The Commissioner also complains that the Rutgers team spent too much time working together, such as the 13 hours Dubin spent reviewing the briefs and the time McGillion and Hussain spent conferring. (Opp'n 4–6.) But lawyers routinely spend much time working together, and this sort of teamwork can often save as much time as it adds. Finally, the Commissioner complains that the Rutgers team billed time spent performing clerical tasks, such as filing and printing. (Opp'n 4–6.) But clerical tasks are often within a lawyer's duties, particularly in the absence of a legal support staff. See Ashton, 580 F. Supp. at 443 ("If compensation for the work of law clerks and paralegals was denied entirely . . . this also might frustrate the purposes of the EAJA by 'forc[ing] attorneys to handle the entire case themselves, achieving the same results but at a much higher cost.'" (quoting Berman v. Schweiker, 531 F. Supp. 1149, 1154–55 (N.D. Ill. 1982))). Furthermore, the Court finds again that Chonko reasonably accommodated any excess by billing for only half of this time. The Commissioner also challenges the $100 per hour rate billed by McGillion and Hussain, but the Court finds this rate reasonable. See Groskreutz v. Barnhart, No. 02-C-454-C, 2005 WL 567814, at *1 (W.D. Wis. Feb. 28, 2005) (awarding $100 per hour

8

under EAJA for work performed in a social security case by a nonlawyer); Embry v. Barnhart, No. 02-C-3821, 2003 WL 22478769, at *3 (N.D. Ill. Oct. 31, 2003) (awarding $95 per hour under EAJA for work performed in a social security case by a nonlawyer).

In summary, the Court finds the hours and rates billed by the Rutgers team reasonable. Accordingly, it will award EAJA fees in the amount of $15,182.96. As the Court will now explain, the recipient of those fees is Chonko, not his lawyers.

**B.     Whether EAJA Fees Should Be Awarded to Chonko or His Counsel**

Chonko requests that any award under EAJA go to his counsel. The Commissioner argues that any award should go directly to Chonko.

The issue of whether EAJA fees should be awarded to a litigant or his counsel has been making its way through the federal courts but has yet to garner a consensus.[4] This Court now throws its hat into the ring and holds that the proper recipient of EAJA fees is

---

[4] In the following cases, the court held that the proper recipient of EAJA fees is the plaintiff. Manning v. Astrue, 510 F.3d 1246, 1251 (10th Cir. 2007); FDL Techs., Inc. v. United States, 967 F.2d 1578, 1580 (Fed. Cir. 1992); McCarty v. Astrue, 505 F. Supp. 2d 624, 629 (N.D. Cal. 2007); Reeves v. Barnhart, 473 F. Supp. 2d 1173, 1176 (M.D. Ala. 2007); Vongphakdy v. Astrue, No. 07-1010, 2008 WL 650017, at *1–2 (E.D. Pa. Mar. 11, 2008); Lyons v. Astrue, No. 05-689-CB-B, 2008 WL 474285, at *4 (S.D. Ala. Feb. 15, 2008); Bribiesca v. Astrue, 2008 WL 60413, at *1 (N.D. Cal. Jan. 3, 2008). In the following cases, the court held that the proper recipient of EAJA fees is the plaintiff's counsel. Smith v. Astrue, No. 06-J-2052-IPJ (N.D. Ala. Oct. 11, 2007); Richardson v. Astrue, No. 06-331-CV-W-SWH (W.D. Mo. Oct. 2, 2007); Haymaker v. Astrue, No. CIV-06-452-F (W.D. Okla. August 7, 2007). Consensus is absent even in this district. Compare Gardenshire v. Comm'r of Soc. Sec., No. 06-1188 (D.N.J. June 25, 2007) (holding that EAJA fees are properly payable to the plaintiff), with Vargas v. Comm'r of Soc. Sec., No. 07-3586 (D.N.J. March 12, 2008) (holding that EAJA fees are properly payable to plaintiff's counsel).

the litigant, not his counsel. This holding derives foremost from EAJA's plain text, the natural starting place for an interpretive analysis. Indeed, the textual analysis and resolution accords with the Supreme Court's analysis and resolution of the same issue arising from another attorney's fee statute—the language of which is identical to EAJA in relevant part. The Court acknowledges that its holding may somewhat frustrate EAJA's purpose of facilitating meritorious litigation against the government but finds such frustration of little moment.

      1.    **EAJA's Text**

As mentioned above, the Court's conclusion is commanded foremost by the natural reading of EAJA's text. The starting point when interpreting a statute is the plain meaning of its text. Knight v. Comm'r of Internal Revenue, 128 S. Ct. 782, 787 (2008); Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999); Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992); In re Am. Pad & Paper Co., 478 F.3d 546, 552 (3d Cir. 2007). Where the text provides a clear answer to the interpretive question, the analysis ends there as well. Hughes, 525 U.S. at 438; Estate of Cowart, 505 U.S. at 475; Am. Pad, 478 F.3d at 552; see In re Udell, 454 F.3d 180, 185 (3d Cir. 2006). EAJA provides that in any civil action brought by or against the United States, attorney's fees shall be awarded "to a prevailing party." 28 U.S.C. § 2412(d)(1)(A). The most natural interpretation—indeed the only reasonable interpretation—of the term "prevailing party" is that it refers to the litigant herself, not her attorney. Thus the act's awarding of fees to

the "prevailing party"—not the prevailing party's attorney—is itself sufficient to determine the proper recipient of EAJA fees. This textual analysis finds approval in many courts. See, e.g., Manning, 510 F.3d at 1251 ("[T]he statutory language [of EAJA] alone makes it clear that the prevailing party and not the attorney may recover an award of attorney's fees . . . ."); FDL, 967 F.2d at 1580 ("By its terms, [EAJA] states that the fee award is made to a *prevailing party*, not the prevailing party's attorney."); Gardenshire, No. 06-1188 ("This Court . . . interprets the plain language of the EAJA as providing that the Court should award fees and costs to the prevailing party, and not to the prevailing party's attorney.").

This interpretation of the immediately relevant EAJA subsection also finds support in the text of other EAJA subsections. When determining the plain meaning of a statute's text, courts may consider not only the particular language at issue but also the structure and context of the statutes in which the language is found. Register v. PNC Fin. Servs. Group, Inc., 477 F.3d 56, 67 (3d Cir. 2007); see In re Jaritz Indus., Ltd., 151 F.3d 93, 100 (3d Cir. 1998); Health Maint. Org. of N.J., Inc. v. Whitman, 72 F.3d 1123, 1127 (3d Cir. 1995). Other EAJA subsections indicate that the congressional drafters distinguished between a "prevailing party" and his attorney. For example, 28 U.S.C. § 2412(d)(2)(B) defines "party" as either "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed"or the "any owner" of certain businesses. If the term "party" refers to a litigant, then § 2412(d)(2)(B) appears to be a reasonable restriction,

barring wealthy litigants from recovering attorney's fees. But if this definition of "party" refers to a litigant's counsel, then the litigant's ability to recover attorney's fees hinges on his counsel's personal wealth or status as a business owner, a seemingly absurd result. Section 2412(d)(2)(B) thus indicates that Congress intended the term "prevailing party" to refer to the litigant, as it ostensibly describes the type of litigant who may receive fees. Also, 28 U.S.C. § 2412(d)(1)(B) states that a prevailing party may seek attorney's fees and that the party shall "submit to the court an application for fees . . . including an itemized statement from any attorney . . . appearing in behalf of the party." This subsection further indicates that "prevailing party" refers only to the actual litigant since it distinguishes between a "prevailing party" and an "attorney . . . appearing in behalf of the party." § 2412(d)(1)(B).

Indeed, Congress is quite cognizant of the distinction between litigants and their lawyers in the attorney's fee context. This is evidenced by other statutes awarding fees directly to attorneys. For example, section 206(b) of the Social Security Act, 42 U.S.C. § 406(b)(1)(A), provides that a court may award fees to attorneys who represent winning claimants in social security cases.[5] See Frazier v. Apfel, 240 F.3d 1284, 1286 (10th Cir. 2001). In contrast to EAJA fees, however, which Congress provided shall be awarded to

---

[5]These fees are slightly different than EAJA fees. As the Tenth Circuit has explained, "[f]ees under § 406(b) satisfy a client's obligation to counsel and, therefore, are paid out of the plaintiff's social security benefits, while fees under the EAJA penalize the Secretary for assuming an unjustified legal position and, accordingly, are paid out of agency funds."). Orner v. Shalala, 30 F.3d 1307, 1309 (10th Cir. 1994).

the "prevailing party," fees under § 406(b) are awarded directly to the attorney:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and *the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits*.

§ 406(b)(1)(A) (emphasis added).  The Tenth Circuit has noted that § 406(b) evidences Congress's awareness of whether fees should be awarded to litigants or their counsel:

> Thus, unlike the EAJA, § 406(b) expressly provides for payment to the attorney. Congress has not substantially amended § 406(b) since enacting the EAJA. From this, we draw the conclusion that Congress knows what language to use to award attorney's fees to an attorney and what language to use when it chooses to award the fees to the prevailing party. Congress could have worded the EAJA statute to award attorney's fees to the attorney, but it did not do so.

Manning, 510 F.3d at 1252.  The Court agrees with the Tenth Circuit that Congress "knows what language to use to award attorney's fees to an attorney and what language to use when it chooses to award the fees to the prevailing party," as evidenced by § 406(b).

Chonko attempts to argue that EAJA's text is ambiguous with respect to the proper recipient of attorney's fees.  In support, Chonko highlights a clause in EAJA that Chonko refers to as the "Savings Provision."  (Reply 14.)  This provision, set forth in section 206(b) of EAJA, provides as follows:

13

> Section 206(b) of the Social Security Act (42 U.S.C. 406(b)(1)) shall not prevent an award of fees and other expenses under section 2412(d) of title 28, United States Code. Section 206(b)(2) of the Social Security Act shall not apply with respect to any such award but only if, *where the claimant's attorney receives fees for the same work under both section 206(b) of that Act and section 2412(d) of title 28, United States Code, the claimant's attorney refunds to the claimant the amount of the smaller fee*.

Equal Access to Justice Act, Pub. L. 99-80, sec. 3, § 206, 99 Stat. 183 (1985) (emphasis added). The Savings Provision thus requires an attorney who receives fees under both EAJA and section 206(b) of the Social Security Act to "refund" to the claimant the amount of the smaller fee. Chonko argues that "[a] direction to refund obviously implies an intent that the fee would be paid *to* the attorney; otherwise, it would make no sense to direct him/her to *refund* it." (Reply. 14–15.) Numerous courts dealing with the EAJA fee issue have agreed with this argument. See, e.g., Whatley v. Astrue, No. 07-CV-117-UWC (N.D. Ala. Nov. 2, 2007); Morrow v. Astrue, No. CIV-05-511-RAW (E.D. Okla. Sept. 13, 2007).

This Court, however, disagrees. The Savings Provision does not directly discuss the proper recipient of an EAJA award. It merely describes situations in which an attorney "receives" fees—without mention of whether the receipt is directly from the court or indirectly through a litigant—and requires the attorney in certain situations to "refund" those fees to the claimant. This language stands in contrast to § 2412, which directly discusses the proper recipient of EAJA fee awards, stating that fees shall be

14

awarded "to the prevailing party." Moreover, the Savings Provision's use of the verb "refund" suggest, if anything, that the lawyer receives fees from the claimant, to whom he must "refund" the fees in certain situations. One cannot "refund" money to a person unless one has already received money from that person. See MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 981 (10th ed. 2002) (defining the term "refund" as "to give or put back" or "to return (money) in restitution, repayment, or balancing of accounts").[6] Thus the Savings Provision does not weaken the textual analysis.

### 2.      Similar Attorney's Fee Statutes

This textual analysis and conclusion tracks that of many courts—including the Supreme Court—dealing with a similar attorney's fees statute: the Civil Rights Attorney's Fees Awards Act of 1976. That act, codified at 42 U.S.C. § 1988, provides that in actions to enforce certain sections of Title 42 of the U.S. Code, the court "may allow the prevailing party . . . a reasonable attorney's fee." In Evans v. Jeff D., 475 U.S. 717 (1986), the Supreme Court addressed whether plaintiffs in such cases could enter settlements that required them to waive this right to attorney's fees. 475 U.S. at 727. The Court held that they could, reasoning that "the language of the Act . . . indicates that

---

[6]This definition of "refund"—the only reasonable definition of which the Court is aware—cannot hold consistently in the Savings Provision. Courts undoubtedly award fees under § 406 directly to attorneys (as explained above), in which circumstance it makes little sense that the Saving Clause may then require attorneys to "refund" those fees to claimants, who never possessed the fees in the first place. This textual inconsistency serves to further underscore that the Savings Provision language is ambiguous with respect to the initial recipient of attorney's fees.

Congress bestowed on the 'prevailing *party*' (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees." Id. at 730 (citation omitted). The Court noted that "[t]his straightforward reading of § 1988 accords with the view held by the majority of the Courts of Appeals," and the Court proceeded to quote cases from circuit courts holding that § 1988 attorney's fee awards belong to the prevailing party—not his attorney. Id. at 732 n.19; see Brown v. Gen. Motors Corp., 722 F.2d 1009, 1011 (2d Cir. 1983) ("Under [42 U.S.C. § 1988] it is the prevailing party rather than the lawyer who is entitled to attorney's fees."); White v. N.H. Dep't of Employment Sec., 629 F.2d 697, 703 (1st Cir. 1980) ("[A]ward of attorney's fees goes to the 'prevailing party,' rather than attorney."). Since Evans, the Supreme Court has consistently reaffirmed its holding that an attorney's fee award under § 1988 belongs to the "prevailing party" and not his attorney. See Venegas v. Mitchell, 495 U.S. 82, 89 (1990) ("[W]e have already rejected the argument that the entitlement to a § 1988 award belongs to the attorney rather than the plaintiff."). This textual analysis should apply with equal force to the identical "prevailing party" language contained in the EAJA.

Indeed, the Supreme Court has explicitly held that the standards governing the interpretation of § 1988's language should govern interpretation of the same language in other attorney's fees statutes. In Hensley, 461 U.S. at 426, the Court addressed the issue of whether a plaintiff who prevailed on some but not all claims was a "prevailing party" and thus could recover § 1988 attorney's fees for legal services rendered to litigate the

16

unsuccessful claims.  The Court held, inter alia, that a plaintiff is a "prevailing party" if she succeeds on any significant issue in litigation that achieves some of the benefits sought in the suit.  Id. at 433.  The Court noted that this analysis should be consistent in all attorney's fee statutes that used the "prevailing party" standard: "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" Id. at 433 n.7.  This preference for a consistent interpretation of the term "prevailing party" combined with the Court's more general instruction to interpret similar language from similar statutes similarly, Smith v. City of Jackson, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."), weighs in favor of interpreting the term "prevailing party" in EAJA as the Supreme Court has interpreted the same term in § 1988: to refer to a litigant and not her lawyer.

### 3. EAJA's Purpose

Chonko argues that awarding EAJA fees to a litigant, rather than her counsel, may frustrate EAJA's purpose.  While the Court agrees with this proposition, the Court accords it little weight in interpreting EAJA.

The purpose of the EAJA is to allow litigants to challenge governmental action.  EAJA accomplishes this purpose by allowing litigants challenging governmental action to recover attorney's fees, thus diminishing a powerful disincentive litigants otherwise have

to mount such challenges. See Equal Access to Justice Act, Pub. L. No. 96-481, § 202(c)(1), 94 Stat. 2321 (1980) ("It is the purpose of this title . . . to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees . . . against the United States . . . ."). The theory underlying EAJA is that individuals with claims against the federal government will have a greater ability to actually assert those claims if their attorneys can recover attorney's fees in a successful suit.

Chonko argues that this purpose may be frustrated if courts award fees to litigants, rather than counsel, because of federal regulations that allow the United States to seize awards from litigants in certain situations. (Opp'n 4.) Several sections in Title 31 of the Code of Federal Regulations allow the Federal Financial Management Service (within the Department of the Treasury) to offset payments that the federal government owes to an individual with certain debts that the individual owes to the government. See 31 C.F.R. §§ 285.1–.8; see also Manning, 510 F.3d at 1256 ("We conclude that the EAJA attorney's fees award was properly paid to Ms. Manning and that those fees were subject to administrative offset by the Debt Collection Improvement Act for student loan debts she owed to the Department of Education."). Chonko argues that if courts award EAJA fees to a social security claimant, the United States may frustrate EAJA's purpose by offsetting those fees if the claimant has outstanding debts to the government. (Opp'n 4–5.) This argument finds support in many cases holding that the proper recipient of

EAJA fees is the litigant's counsel. See, e.g., Smith v. Astrue, No. 06-J-2052-IPJ (N.D. Ala. Oct. 11, 2007).

This Court, however, is unpersuaded by Chonko's purposive argument. The Court acknowledges that allowing the government to use statutory offsets to reduce its EAJA payments may frustrate EAJA's purpose. But it is equally true that such practices serve the purposes of those statutory offsets: to allow the federal government to collect debts owed to it. See Debt Collection Improvement Act of 1996, Pub. L. 104-134, 110 Stat. 1321–358; Exec. Order No. 13,019, 61 Fed. Reg. 51,763 (Sept. 28, 1996) ("[T]he primary purpose of the Debt Collection Improvement Act is to increase the collection of nontax debts owed to the Federal Government . . . ."). The Court sees no reason to prefer a policy of encouraging meritorious litigation over a policy of collecting government debts. Indeed, the indeterminacy of this purposive analysis further reinforces the Court's reliance on the textual analysis above.

### 4. Whether the Commissioner's Interpretation Would Result in a "Windfall" for Claimants

Chonko puts forth a final argument in support of his interpretation. Chonko claims that where litigants are represented by pro bono counsel, courts should award EAJA fees directly to those counsel since pro bono counsel may be prohibited from indirectly receiving those same fees from the client. (Opp'n 6 n.5.) Chonko argues this could result in a "windfall" for claimants.

But Chonko lacks support for the premise that pro bono counsel may not accept

19

assignments of statutory attorney's fees. This Court is unaware of any law that allows pro bono counsel to accept statutory attorney's fees from a court but does not allow pro bono counsel to accept assignments of such fees from litigants. Chonko appears unable to produce such a law, as his counsel merely states the following: "Thus, to my knowledge, we cannot generally execute assignments of client money or income from the client to the clinic to pay for legal services otherwise provided ostensibly without payment from the clients." (Dubin Dec'l ¶ 8.) The Court has found no legal support for this proposition, so the Court finds no danger of a windfall in awarding EAJA fees to litigants, rather than attorneys.

### III.    CONCLUSION

In conclusion the Court finds that Chonko's requested EAJA fees of $15,182.96 are reasonable. And for the reasons stated above, the Court awards these fees to Chonko, not his counsel. An appropriate Order accompanies this Opinion.

                                                                  s/ William J. Martini
                                                                  William J. Martini, U.S.D.J.